NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DANA R. LERNER,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　　　Defendant. | Civil Action No.: 21-4073<br><br>**OPINION** |

**CECCHI, District Judge.**

**I.　INTRODUCTION**

Before the Court is the appeal of Dana R. Lerner ("Plaintiff") seeking review of a final decision by the Commissioner of the Social Security Administration ("Commissioner" or "Defendant") denying her application for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act ("SSA" or the "Act"). This matter is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the decision of the Administrative Law Judge ("ALJ") is affirmed.

**II.　BACKGROUND**

Plaintiff is currently a 48-year-old female with a high school level of education. Tr.[1] at 29, 44. She was last employed in 2017 as a case worker for the Middlesex County, New Jersey Welfare Board, a position she held for 17 years. *Id.* at 21. In addition to her work for Middlesex County, Plaintiff owned and taught classes at a dance studio. *Id.* Records indicate that Plaintiff suffers from agoraphobia, depression, anxiety, panic attacks, and peripheral axonal neuropathy in her left calf.

---

[1] "Tr." refers to the certified record of the administrative proceedings. ECF No. 5.

1

*Id.* Moreover, records suggest that Plaintiff's obesity complicates her condition, that she has been diagnosed with carpel tunnel syndrome, and that she has some history of hypercholesterolemia and hypothyroidism. *Id*. at 17, 26–27.

As to her mental impairments, Plaintiff testifies that she has had agoraphobia, depression, and panic attacks since age 14. *Id.* at 50. Due to these conditions, Plaintiff has difficulty leaving the house and being away from home for long periods of time. *Id.* at 21. Further, Plaintiff testified that she has panic attacks three to five times a week, and during these episodes, she experiences blurred vision and muffled hearing, and hyperventilates. *Id*. at 21, 51. Plaintiff also reports that she has trouble focusing, lacks motivation, and is often exhausted. *Id.* at 22, 50, 57–58.

Regarding her physical limitations, records indicate that Plaintiff tore a muscle and a nerve in her left calf after a slip and fall accident. *Id.* at 21, 54. As a result of the injury, Plaintiff uses a cane to ambulate, and she walks with an antalgic gait. *Id*. at 21, 22. For walking outside, Plaintiff uses a rollator. *Id*. at 21. In addition, due to her carpel tunnel syndrome, Plaintiff reports pain in her hands, making it difficult to write or use a computer for prolonged periods of time. *Id.*

Despite her limitations, Plaintiff reports that she can walk around stores for short periods, and is "mobile a little bit." *Id.* at 59. Records also indicate that she joined Weight Watchers, and was exercising in a pool. *Id*. at 23–24. Further, Plaintiff drives locally, takes care of her personal hygiene, prepares simple foods, buys necessities when she needs them, and manages the household finances with her husband. *Id*. at 19. Plaintiff also reported spending time with family, and, while she does not go out often, she reported having friends. *Id.* She also stated that she gets along with others, including authority figures. *Id.* Records assert that Plaintiff can perform simple calculations, that her recall memory is intact, and that she has fair to good judgment. *Id.* at 19, 25. Moreover, these records indicate Plaintiff exhibits coherent thought processes, and is fully

oriented. *Id.* at 25–26.

On August 15, 2018, Plaintiff filed an application for DIB, alleging disability beginning June 5, 2017, due to depression, anxiety, panic attacks, agoraphobia, and peripheral axonal neuropathy. *Id.* at 15, 21. Plaintiff's claim for DIB was denied initially on November 9, 2018, and upon reconsideration on March 12, 2019. Plaintiff requested and was granted a hearing before an Administrative Law Judge ("ALJ") held in February 2020, at which Plaintiff and an impartial vocational expert testified. *Id.* at 38–66.

On March 20, 2020, the ALJ determined Plaintiff was not disabled from June 5, 2017 through the date of his decision and denied her request for DIB because the ALJ determined that Plaintiff could successfully adjust to other sedentary work existing in significant numbers in the national economy. *Id.* at 20, 30. Thereafter, on January 6, 2021, the Social Security Administration's Appeals Council denied Plaintiff's request for review of the ALJ's decision. *Id.* at 1. This appeal followed. ECF No. 1.

### III. <u>LEGAL STANDARD</u>

#### A. Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. §§ 405(g), 1383(c)(3). The Court is not "permitted to re-weigh the evidence or impose [its] own factual determinations," but must give deference to the administrative findings. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011); *see also* 42 U.S.C. § 405(g). Nevertheless, the Court must "scrutinize the record as a whole to determine whether the conclusions reached are rational" and substantiated by substantial evidence. *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978) (citations omitted). Substantial evidence is more than a mere scintilla and is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Chandler*, 667 F.3d at 359 (citations omitted). If the factual record is adequately developed, substantial evidence "may be 'something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Daniels v. Astrue*, No. 08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). In other words, under this deferential standard of review, the Court may not set aside the ALJ's decision merely because it would have come to a different conclusion. *See Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479 (3d Cir. 2007).

### B. Determining Disability

In order to be eligible for benefits under the SSA, a claimant must show she is disabled by demonstrating an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Considering the claimant's age, education, and work experience, disability is evaluated by the claimant's ability to engage in her previous work or any other form of substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). A claimant is disabled for SSA purposes only if her physical or mental impairments are "of such severity that [she] is not only unable to do [her] previous work, but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

Decisions regarding disability are made individually and will be "based on evidence adduced at a hearing." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000) (citing *Heckler v. Campbell*, 461 U.S. 458, 467 (1983)). Congress has established the type of evidence necessary to

prove the existence of a disabling impairment by defining a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(a)(3)(D).

### C. Sequential Evaluation Process

The Social Security Administration follows a five-step, sequential evaluation to determine whether a claimant is disabled under the SSA. 20 C.F.R. §§ 404.1520, 416.920.

First, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. *Sykes*, 228 F.3d at 262. Second, if the claimant is not engaged in such activity, the ALJ determines whether the claimant has any impairments severe enough to limit her ability to work. *Id.* Third, if she has any severe impairments, the ALJ considers the medical evidence to determine whether the impairment or combination of impairments is included in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). If the claimant's impairment(s) medically equal one of the Listings, this results in a presumption of disability. *Sykes*, 228 F.3d at 262. If the impairment is not in the Listings, the ALJ must determine how much residual functional capacity ("RFC") the applicant retains despite her impairment. *Id.* at 263. Fourth, the ALJ must consider whether the claimant's RFC is enough to perform her past relevant work. *Id.* Fifth, if her RFC is not sufficient to perform past work, the ALJ must determine whether there is other work in the national economy the claimant can perform. *Id.*

The evaluation continues through each step unless it is ascertained at any point the claimant is or is not disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the ultimate burden of establishing steps one through four. *Ramirez v. Barnhart*, 372 F.3d 546, 550 (3d Cir. 2004). The burden shifts to the Commissioner at step five to prove that the claimant can perform

a job that exists in the national economy. *Id.* at 555.

## IV.   DISCUSSION

### A.   Summary of the ALJ's Decision

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since June 5, 2017, the alleged onset date. Tr. at 17. At step two, the ALJ found Plaintiff had the following severe impairments: left tibial neuropathy, carpal tunnel syndrome, obesity, depressive disorder, and anxiety disorder. *Id.* At this step, the ALJ also noted that Plaintiff's records show a history of hypercholesterolemia and hypothyroidism. *Id.* Although the ALJ determined that these conditions caused no more than minimal limitations, he stated that he would consider them when assessing Plaintiff's residual functional capacity. *Id.* at 17–18. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments in the Listings. *Id.* at 17–20. Because the ALJ found that Plaintiff's impairments did not equal an impairment enumerated in the Listings, the ALJ then formulated Plaintiff's RFC. *Id.* at 20–30.  Based on all the evidence in the record, the ALJ found that during the relevant period, Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) with several exceptions. *Id.* at 20. The ALJ's RFC stated Plaintiff "must be able to use a cane when standing and walking and sit for 1–5 minutes at the work station after 30 minutes of standing and walking." *Id.* Further, the RFC calculation noted that Plaintiff could "frequently handle and finger bilaterally," and could "occasionally climb ramps and stairs; never climb ladders, ropes and scaffolds; can occasionally balance, stoop, knee and crouch; and never crawl. She can never be exposed to unprotected heights, hazardous moving mechanical parts or operate a motor vehicle." *Id.* Finally, Plaintiff's RFC accounted for her ability to "understand, remember, and carry out simple instructions in a work environment with only

occasional changes to essential job functions," as well as her ability "to make simple work-related decisions," and to "occasionally interact with supervisors, coworkers and the public." *Id.*

At step four, the ALJ determined Plaintiff could no longer perform her past relevant work as a dancing instructor and social services aide because the demands of those jobs exceeded her RFC. *Id.* at 29. At step five, based on Plaintiff's background, work experience, RFC, and the vocational expert's testimony, the ALJ concluded that Plaintiff could perform a significant number of sedentary, unskilled jobs existing in the national economy. *Id.* at 30. Accordingly, the ALJ found Plaintiff not disabled and denied Plaintiff's application for DIB. *Id.*

### B. Plaintiff's Arguments on Appeal

In the instant appeal, Plaintiff asserts that the ALJ committed three errors. First, Plaintiff argues that the ALJ did not consider the effects of Plaintiff's obesity alone or in combination with her other impairments in the medical equivalence analysis at step three. ECF No. 12. at 10–22. Second, asserting further error at step three, Plaintiff argues that the ALJ failed to consider Plaintiff's severe impairments in combination with each other, and had he correctly done so, the ALJ would have determined that Plaintiff was presumptively disabled. *Id.* at 22–30. Third, Plaintiff argues that at step five the ALJ improperly credited the vocational expert's testimony. Specifically, Plaintiff asserts that the hypotheticals presented by the ALJ upon which the expert based his opinion did not incorporate all of Plaintiff's credibly established limitations. *Id.* at 30–37.

#### 1. The ALJ's Assessment of Plaintiff's Obesity

Beginning with the ALJ's consideration of Plaintiff's obesity, the Third Circuit Court of Appeals has held that "an ALJ must meaningfully consider the effect of a claimant's obesity, individually and in combination with her impairments, on her workplace function at step three and at every subsequent step." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009)

7

(remanding because the ALJ did not discuss the cumulative impact of Plaintiff's obesity and other impairments on her functional capacities). In assessing the impact of claimant's obesity, the ALJ must discuss the evidence and explain his reasoning in a manner that would be "sufficient to enable meaningful judicial review." *Id.*

Here, the Court finds that the ALJ adequately considered the combined effects of Plaintiff's obesity with her other impairments throughout his analysis. After determining that Plaintiff's obesity constituted a severe impairment at step two, the ALJ, when conducting the medical equivalency analysis at step three, found that Plaintiff's impairments, either considered alone or in combination, did not equal the severity of an impairment in the Listings. Tr. at 18. In particular, the ALJ reached this conclusion having "fully considered obesity in the context of the overall record." *Id*. Further, the ALJ explained that he evaluated Plaintiff's obesity pursuant to the requirements enumerated in Social Security Regulation 19-2p. *Id.* Accordingly, this Court finds that the ALJ appropriately considered Plaintiff's obesity as part of the medical equivalency analysis at step three. *See Morris v. Comm'r of Soc. Sec.*, No. 19-cv-8472, 2020 WL 6580778, at *3 (D.N.J. Nov. 10, 2020) (finding an ALJ sufficiently considered obesity where the ALJ stated that he considered the combined effect of obesity with other severe impairments).

The ALJ further considered Plaintiff's obesity in constructing the RFC. Specifically, the ALJ determined that the record was devoid of evidence that obesity, either alone or in combination with another impairment, caused Plaintiff to be unable to work. Tr. at 26. In reaching this conclusion, the ALJ explained that Plaintiff's records indicated that she has participated in a weight loss program, and that she is able to ambulate with the help of a cane or, for longer walks outdoors, a rollator. *Id.* at 24, 26. The ALJ further determined that Plaintiff had not suffered from any loss of "coordination, imbalance, or disuse atrophy or loss of muscle strength, bulk or tone," due to her

obesity. *Id*. at 26. Indeed, the ALJ noted that no physician found Plaintiff's obesity to be disabling. *Id.* Thus, contrary to Plaintiff's contentions, her obesity was amply considered by the ALJ, and the ALJ's conclusions regarding Plaintiff's obesity were rationally supported by substantial evidence. *Rawls v. Comm'r of Soc. Sec.*, No. 20-cv-9305, 2022 WL 950816, at *5 (D.N.J. Mar. 30, 2022); *Neff v. Astrue*, 875 F. Supp. 2d 411, 423 (D. Del. 2012).

Moreover, Plaintiff has not explained how further consideration of obesity would influence the ALJ's analysis. Specifically, Plaintiff has not pointed to any evidence in the record indicating that obesity impacted her impairments such that the medical equivalency analysis would change or that she required additional RFC limitations due to her obesity. Further, Plaintiff does not list obesity in her disability report (Tr. at 191), and she did not testify regarding obesity at her hearing before the ALJ (Tr. at 38–66). Mere speculation that obesity combined with other impairments necessitates more significant RFC limitations is insufficient to overturn the ALJ's analysis. *See Cosme v. Comm'r of Soc. Sec.*, 845 F. App'x 128, 132 (3d Cir. 2021) (a "generalized response" that obesity would affect another impairment is insufficient); *Carter v. Comm'r of Soc. Sec.*, 805 F. App'x 140, 143 (3d Cir. 2020) (claimant must establish not just that "obesity can impair one's ability to perform basic work activities," but must also "specify[] how her obesity . . . affected her ability to perform basic work activities"). Accordingly, without an explanation from Plaintiff regarding how obesity impacts her ability to work or an identification of medical evidence in the record regarding her condition, further analysis of Plaintiff's obesity would not change the ALJ's conclusion, and remand is not warranted. *Rutherford v. Barnhart*, 399 F.3d 546, 552–53 (3d Cir. 2005); *see also Neff*, 875 F. Supp. 2d at 423 ("The Court cannot remand the ALJ's decision based on the failure to confront evidence that does not exist.").

Finally, to the extent Plaintiff cites to this Court's decision in *Rodriguez v. Comm'r of Soc.*

9

*Sec.*, No. 17-cv-9429, 2019 WL 397983 (D.N.J. Jan. 30, 2019) in support of remand, that case is distinguishable from the instant appeal. There, the Court issued remand because it found the ALJ's analysis regarding obesity—two statements that the ALJ "considered 'obesity' in accordance with [Social Security Administration regulations]" and considered the "additional effects of obesity"—was "conclusory" and "evade[d] any meaningful judicial review." *Id*. at *4.  Here, however, the ALJ went beyond simply reporting that he analyzed obesity pursuant to the agency regulations. Tr. at 18. Indeed, the ALJ also explicitly stated that he considered obesity in the context of the overall record. *Id.* And further, the ALJ referenced Plaintiff's obesity throughout his sequential evaluation, noting her capacity to walk, her muscle tone and strength, and the fact that no physician determined her obesity to be disabling. *Id.* at 26. Therefore, unlike in *Rodriguez*, the ALJ here meaningfully considered Plaintiff's obesity and supported his determinations with substantial evidence. *Diaz*, 577 F.3d at 504.

### 2. The ALJ's Finding of No Presumptive Disability

Next, Plaintiff contends that the ALJ failed at step three to consider Plaintiff's severe impairments in combination, and further argues that had the ALJ properly considered the impairments together, he would have concluded Plaintiff was disabled pursuant to listing 11.14A and/or 11.14B for peripheral neuropathy. ECF No. 12 at 22–30. When assessing whether a claimant is disabled at step three, the ALJ must "set forth the reasons for his decision." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2020). However, an ALJ's step three analysis need not use "particular language or adhere to particular form," but must only provide a "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). Moreover, it is the plaintiff's burden to demonstrate that her severe impairment meets an impairment in the Listings. *Sullivan v. Zebley*, 493 U.S. 521,

10

530 (1990). "To do this a [plaintiff] must show that all of the criteria for a listing are met or equaled. An impairment that meets or equals only some of the criteria for a listed impairment is not sufficient." *Gunder v. Astrue*, No. 11-cv-300, 2012 WL 511936, at *14 (M.D. Pa. Feb. 15, 2012) (citations omitted).

Here, the ALJ determined that Plaintiff was not disabled under 11.14A because "the record does not show evidence of peripheral neuropathy with disorganization of motor function in two extremities, resulting in the extreme limitation in the ability to stand up from a seated position, balance while standing or walking or use of the upper extremities." Tr. at 18. Specifically, the ALJ found that although Plaintiff walks with a gait and uses a cane or walker, "there is no suggestion the claimant cannot stand, balance or walk at all." *Id.* Moreover, the ALJ concluded that Plaintiff does not suffer from coordination or balance issues, and that the Plaintiff is able to use her hands for fine manipulations, as the Plaintiff reported she crochets. *Id.* And, as noted above, the ALJ considered Plaintiff's peripheral neuropathy in combination with her other impairments, including obesity. *Id.* Finally, medical records cited by the ALJ in making this determination do not indicate that Plaintiff is limited in two extremities as is required by 11.14A. For example, the treatment notes of Dr. Stephen Sachs, a neurologist, state that he found no weakness in Plaintiff's upper extremities or in her right leg (*id.* at 289), while neurologist Dr. Samuel Wilchfort determined that Plaintiff exhibited normal strength, including in her lower extremities, and that she could toe walk and heel walk with some discomfort (*id.* at 423–24).

Further, the ALJ determined that Plaintiff's impairments did not meet the requirements in 11.14B because, assessing her impairments either alone or in combination, the record did not show "evidence of peripheral neuropathy resulting in marked limitations in physical function *and* marked limitation in . . . understanding, remembering or applying information; interacting with

11

others; concentrating, persistence or maintaining pace; or adapting or managing oneself." *Id.* at 18 (emphasis added). Related to understanding, remembering, or applying information, the ALJ concluded that Plaintiff has mild limitations. *Id.* at 18–19. In making this finding, the ALJ determined that while Plaintiff had difficulty following instructions, she exhibited average intelligence, can do simple calculations and abstract thinking, and demonstrated logical and coherent through-processes. *Id.* at 19. Moreover, the ALJ noted that Plaintiff is fully oriented and has fair to good judgment. *Id.* In terms of interacting with others, the ALJ determined that Plaintiff has moderate limitations. *Id.* The ALJ recognized that Plaintiff does not leave the house on a regular basis, but also noted that Plaintiff has not reported any difficulty getting along with others. *Id.* Further, Plaintiff's physicians observed her to be pleasant and cooperative with fluent and clear speech. *Id.* The ALJ also indicated that Plaintiff has a moderate limitation with concentrating, persistence or maintaining pace. *Id.* Specifically, although the ALJ found that Plaintiff experienced depressed and anxious moods as well as decreased concentration, he also concluded that Plaintiff was fully oriented, had logical thought processes, and exhibited no suggestion she was overly slow or easily distracted. *Id.* Finally, in terms of managing oneself, the ALJ wrote that Plaintiff can care for her personal hygiene and grooming. *Id.* He found she can also shop, get necessities when she needs them, and manage money with her husband. *Id.* However, she does not do chores around the house and struggles with changes in her routine. *Id.*

Regarding 11.14A, Plaintiff contends that had the ALJ correctly considered Plaintiff's obesity, her need for a cane or rollator to walk, and her carpal tunnel syndrome in combination, he would have found Plaintiff's impairments created an "extreme limitation" as defined in 11.14A. *Id.* at 26–27. However, as noted above, the ALJ wrote that he considered obesity in the context of the entire record, and further, the ALJ, citing to physician records, explicitly assessed Plaintiff's

ability to walk and use her hands. *See Folk v. Berryhill*, No. 18-cv-2222, 2019 WL 1895066, at *5 (D.N.J. Apr. 29, 2019) (finding that a step three analysis was sufficient where ALJ referenced physician records); *see also Muschko v. Comm'r of Soc. Sec.,* No. 19-cv-9361, 2020 WL 3542501, at *4 (D.N.J. Jun. 30, 2020), *aff'd*, No. 20-cv-2771, 2021 WL 3666638 (3d Cir. Aug. 18, 2021).

As to 11.14B, Plaintiff argues that the ALJ incorrectly categorized her mental impairments as moderate or mild, not marked, as is required to meet 11.14B. ECF No. 12 at 27–30. As discussed previously, the ALJ considered Plaintiff's mental impairments, together and individually, and in reference to the Listing and treatment notes from Plaintiff's physicians. *See Vega v. Comm'r of Soc. Sec.*, No. 19-cv-11399, 2021 WL 268174, at *6 (D.N.J. Jan. 27, 2021) (finding ALJ's analysis at step three appropriate where ALJ cited treatment notes and conducted analysis in terms of the Listings). While Plaintiff may disagree with level of severity the ALJ assigned each of her mental impairments, such a disagreement is not grounds to disturb the decision below. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) ("We will not set the Commissioner's decision aside if it is supported by substantial evidence, even if we would have decided the factual inquiry differently."). Thus, the ALJ's conclusion is based on substantial evidence.

### 3. Vocational Expert Testimony

Finally, Plaintiff argues that the ALJ erred at step five because the hypotheticals he posed to the vocational expert did not incorporate all of Plaintiff's credibly established limitations. ECF No. 12 at 30–37. Specifically, Plaintiff contends that the ALJ did not present the vocational expert "with a hypothetical question which included a sit/stand option, and the jobs for which plaintiff was denied benefits were announced by the [vocational expert] without knowledge that plaintiff required a sit/stand option." *Id.* at 34. At step five, an ALJ may only consider the testimony of a vocational expert if the hypotheticals upon which the expert bases his testimony "accurately

portray[] the claimant's individual physical and mental impairments." *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). Further, a hypothetical "must reflect *all* of a claimant's impairments." *Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002) (quoting *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987)). "Where there exists in the record medically undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert's response is not considered substantial evidence." *Id.* (citing *Podedworny*, 745 F.2d at 218) (citation omitted).

Here, the ALJ found that Plaintiff could perform sedentary work provided that she was afforded allowances for use of a cane and a sit/stand option. Tr. at 24. The ALJ then incorporated this conclusion into Plaintiff's RFC, determining that she "must be able to use a cane when standing and walking and sit for 1-5 minutes at the work station after 30 minutes of standing and walking." Tr. at 20. Based on this RFC, the ALJ proposed various hypotheticals to the vocational expert. The ALJ's first hypothetical described an individual, who, among other things, "must be able to use a cane when standing and walking." *Id.* at 62. Next, the ALJ offered the vocational expert an amended hypothetical describing the individual in the first hypothetical but with the added limitation that the individual "needed to sit for one to five minutes at the workstation after 30 minutes of standing or walking." *Id.* at 63. The ALJ then edited the hypothetical even further by asking the vocational expert to consider the individuals described in the first two hypotheticals if those individuals needed to be off-task for 15% or more of a workday. *Id.* at 64. The Court finds that these hypotheticals adequately reflect the RFC's determination that Plaintiff requires a sit/stand option. Indeed, while he did not use the words "sit/stand option," the ALJ explicitly asked the vocational expert in the second hypothetical to account for the need sit for one to five minutes for every thirty minutes of standing or walking. *See McDonald v. Astrue*, 293 F. App'x 941, 946–

47 (3d Cir. 2008) (finding that a hypothetical may summarize or paraphrase a claimant's impairments credibly established in a RFC). Finally, to the extent Plaintiff argues that the hypotheticals described an individual who unrealistically would be "on-task" for a full work-day without breaks (ECF No. 12 at 34–36), the Court finds this contention unavailing. The ALJ addressed this concern by asking the vocational expert to account for individuals who would be off-task for 15% of a work day. Accordingly, the ALJ's hypotheticals fairly reflect Plaintiff's sit/stand limitation, and, as a result, the ALJ was justified in considering the vocational expert's testimony.

## V.     CONCLUSION

For the reasons above, the ALJ's decision is affirmed.  An appropriate Order will follow.

**DATE:** July 8, 2022

s/ Claire C. Cecchi<br>
**CLAIRE C. CECCHI, U.S.D.J.**